108 S.E.2d 211 (1959)
250 N.C. 194
William A. CHAMBERS, James Hartman, John H. Hartman, W. L. Swain, A. E. Killian, Roy G. Saunders and Charles Hamm, Jr.
v.
ZONING BOARD OF ADJUSTMENT OF WINSTON-SALEM, Carl Dull, Jr., C. C. Smithdeal, Jr., Clyde D. Weatherman, Roy Setzer and A. T. Harrington.
No. 391.
Supreme Court of North Carolina.
April 29, 1959.
*213 Eugene H. Phillips, Winston-Salem, for petitioners-appellants.
Womble, Carlyle, Sandridge & Rice, by H. Grady Barnhill, Jr., Winston-Salem, for respondents-appellees.
HIGGINS, Justice.
The City of Winston-Salem, acting through its proper authorities, adopted a zoning code and appointed a Board of Adjustment as provided in G.S. § 160-172 and succeeding sections. By § 48-2 of its zoning code, the city was divided into 10 "classes of districts," four of which (A-1, A-2, B, and C) are residential. The two first designated are the more restricted. The only difference in the building restrictions of zones A-1 and A-2 are set forth in paragraph (c) of the Zoning Code, § 48-13. The section provides that after hearing, the Board of Adjustment may authorize the issuance of a permit for the construction of multi-family dwellings, not more than two and one-half stories high, as integral parts of a large-scale housing project in a residential A-2 district, provided: "(1) The area for development is not less than ten acres and, when fronting upon an existing street or streets of record, the area extends throughout the block, from intersecting street to intersecting street; (2) the total coverage of the net land area (exclusive of streets) does not exceed eighteen per cent; (3) the number of dwelling units per acre does not exceed eighteen; (4) the same front yards are provided as are required for other buildings in the residence `A-2' districts, and the same provisions are observed in respect to the location of garages and other outbuildings; (5) garage or other satisfactory automobile storage space is provided on the premises, sufficient to accommodate one car for each building unit contained within the development. The board of adjustment may waive side, rear, and front yard requirements, * * *." (Emphasis added.)
At a regular meeting of the Zoning Board of Adjustment held November 4, 1958, the multi-family dwelling project came up for consideration at an open hearing. In explaining the plans, the director of the planning board stated: "It was the opinion of the Planning Board that the buildings were properly located and that the provision of on-street parking along the wide (34-foot) paved roads was adequate." (Emphasis added.)
We are unable to find in the record any evidence as to the plan for garage or automobile storage space, except that which is reported by the approval memorandum of the Planning Board and the oral statement to the same effect made in the meeting by the Planning Board director. Of course, neither the Housing Authority nor the Planning Board, nor the Zoning Board had authority to waive a requirement of the zoning ordinance. The ordinance, 48-13, provides that the Board of Adjustment may waive side, rear, and front yard requirements which are designated as (4), but there is no such authority to waive the requirement number (5)garage and automobile storage space. Does on-street parking along a 34 foot wide paved road comply with condition (5)? There is no provision whatever for a garage for even one automobile. Certainly on-street parking does *214 not qualify as a garage. Does it qualify as "other satisfactory automobile storage space?" It is a well-settled rule of construction, applicable to statutes and ordinances, that under the doctrine ejusdem generis, when enumerations by specific words or terms are used, and they are followed by general words or terms, the general shall be held to refer to the same classification as the specific. See Note 20, 28 C.J.S. p. 1049. The term "other automobile storage space," following "garage," refers to something in the nature of a garage or of that classification. But if we eliminate the word "garage," it would be difficult even then to treat on-road or onstreet parking as satisfactory atuomobile storage space. The storage of an automobile must mean more than leaving it parked on the street. The requirement for garage or other satisfactory automobile storage space was ordained by the city council. It can be changed by the city councilnot otherwise.
The respondents make an appealing argument that the court should be liberal in the construction of the zoning ordinance because of the dire need for better facilities to meet urgent housing needs. The petitioners stress with equal earnestness the annoyances, loss of property values, etc., this project in the area which is classified as Residential A-2 would cause them and their neighbors. Both arguments involve policy. They are politicalnot legal. The question of law involved in the appeal is whether the plan providing for on the roads parking space which the Planning Board and the Zoning Board of Adjustment "deem adequate" is a substantial compliance with the requirement (c)(5) of Zoning Ordinance 48-13. The wording of the ordinance leaves little or no doubt as to its meaning, and to approve the plan on the present showing would be to eliminate (5) in its entirety. If the provision is to be removed, it should be done by the authority that ordained it the city council.
It is plain from the record that we are dealing with a highly controversial project. In passing on the legality of (5), we must assume the city council said what it meant and meant what it said.
Valid reason appears for the requirements as to garage and storage space. In a project with 293 family housing units, we may assume that many children of all age groups will be playing in and around the premises; and that many automobiles will be used by the occupants. We may assume also that children, heedless of danger, will be darting into the streets from behind parked automobiles, creating a situation the dangers of which are obvious. Whether the parking plan contemplates the use of the present four perimeter streets or the building of others, the difference in the danger involved would be one of degree only.
We conclude the evidence before the Adjustment Board, and consequently before Judge Olive, was insufficient to show the plans for the project were in substantial compliance with the garage and storage provision of the zoning ordinance.
The appellant has argued the zoning ordinances involved are invalid for want of authority to enact them and for failure to set up standards for enforcement. These contentions are without merit. Harden v. City of Raleigh, 192 N.C. 395, 135 S.E. 151; Kinney v. Sutton, 230 N.C. 404, 53 S.E.2d 306. On the other hand, the appellee has argued the application for the writ of certiorari, not having specified the failure of the plans to provide for garage and automobile storage space, the writ does not present the question for review. This contention is likewise without merit. "The writ of certiorari, as permitted by the zoning ordinance, statute, is a writ to bring the matter before the court, upon the evidence presented by the record itself." In re Pine Hill Cemeteries, Inc., 219 N.C. 735, 15 S.E.2d 1, 2. "The allowance of the writ, however, like an appeal, constitutes an exception to the judgment, and the Court may review errors of law appearing on the face of the record proper." City of Winston-Salem *215 v. Winston-Salem City Coach Lines, 245 N.C. 179, 95 S.E.2d 510, 512.
"This anomaly in procedure makes it vitally necessary that in reviewing administrative decisions courts zealously examine the record with a view to protecting the fundamental rights of parties, * * *" Russ v. Board of Education, 232 N.C. 128, 59 S.E. 2d 589, 592. "* * * its (certiorari) office extends to the review of all questions of jurisdiction, power, and authority of the inferior tribunal to do the action complained of * * *" Belk's Department Store v. Guilford County, 222 N.C. 441, 23 S.E.2d 897, 901.
Under the foregoing authorities, and for the reasons assigned, the order of the Superior Court of Forsyth County is set aside. The proceeding will be remanded to the Board of Adjustment with direction that the Board withhold approval until the plans show substantial compliance with provision (c) (5) of the zoning ordinance.
Reversed.